# Carson v. The State.

## Violating Prohibition Law.

(Decided Feb. 8, 1912. Rehearing denied Feb. 22, 1912. 58 South. 88.)

1. *Intoxicating Liquors; Evidence.*—The evidence in this case held to warrant a conviction .for selling intoxicating liquors without license and contrary to law.

2. *Same.*—In a prosecution for violating the prohibition law where the state showed that the defendant was a proprietor of a restaurant, and that the back of the room occupied was curtained off to form a private room which opened into another room where quantities of the prohibited liquor was kept on ice ready to serve, evidence of sales made to customers in such back room by a servant or by a negro, was admissible against the defendant, although not shown to have been made in defendant's presence.

3. *Same; Time.*—Where the indictment was returned at the September term 1910 of the court, and the trial was had at the spring term 1911, evidence that the sale was made before the finding of the indictment and sometime within the year 1910, was sufficient to show the time of the sale, and that it was within twelve months.

4. *Same; Instructions.*—The prohibitory laws must be liberally construed so as to accomplish the purpose of their enactment.

5. *Statutes; Validity; Fuller Bill.*—The Fuller Bill (Acts 1909, p. 64, Sec. 4) is not violative of the Constitution.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Will Carson was convicted of violating the prohibition law, and he appeals. Affirmed.

Count 1 was the usual count for the sale of spirituous, vinous, or malt liquors without license and contrary to law. Count 2 was for the manufacture, sell-

ing, offering for sale, barter, exchange, giving away, or furnishing at public places, spirituous, vinous, or malt liquors, without license and contrary to law. Counts 3 and 4 were for selling, offering for sale, keeping for sale, or otherwise disposing of spirituous, vinous, or malt liquors contrary to law.

KNOX, ACKER, DIXON & STERNE, for appellant. There was not evidence sufficient to support a conviction under the indictment.—*Wing v. Underwood*, 4 Deg. M. & G. 633; *State v. Quinn*, 40 Mo. App. 573; *Anderson v. The State*, 39 Ind. 553; *Goods v. The State*, 3 G. Green, 5666; *Wreidt v. The State*, 48 Ind. 579; *Commonwealth v. Dunbar*, 77 Mass. 298; *Parker v. The State*, 4 Ohio State, 463. The evidence was not sufficient to show that the offense was committed within twelve months before the finding of the indictment.— *Yancey v. The State*, 1 Ala. App. 226; *McDowell v. The State*, 61 Ala. 172; *Armstead v. State*, 45 Ala. 340.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The charges were not numbered.—*Gibson v. The State*, 89 Ala. 121; *Martin v. The State*, 1 App. 215. The charges based on the illegality of the prima facie evidence rule, were properly refused.—*Toole v. The State*, 54 South. 195. Counsel discuss the other assignments of error, but without citation of authority.

PELHAM, J.—The defendant was indicted for violating the prohibition laws. The indictment contained five counts, and there was evidence introduced by the state under four of the counts, on each of which, i. e., counts Nos. 1, 2, 3, and 4, the defendant was convicted.

The evidence introduced by the state showed that the defendant was the proprietor of a soft drink stand

and restaurant conducted by him in a storeroom in the city of Anniston. When the officers searched the premises, they found the defendant, Carson, in charge of the storeroom and engaged in locking the door communicating directly into an adjoining room to the defendant's place of business. Upon the door to this adjoining room being opened by the officers engaged in the search, they found two barrels and a half of bottled beer, a tub, full of bottles, with crushed ice in it, another bucket with ice and bottles in it, and 12 or 14 bottles of whiskey. This room was otherwise unoccupied, and the front door closed. The "back department" of the defendant's place of business was curtained off from the front of the store, and there was a table and chairs in this "closed place" in the back of the defendant's place of business, and the rear department of the defendant's establishment was connected with the adjoining room, where the beer and whiskey, etc., were found, by a door. The sheriff, who led the search made by the officers, testified that when he went through the curtains separating the back department of the defendant's place of business from the front portion of the storeroom the defendant, who was in the rear department behind the curtains, closed the connecting door leading into the adjoining room, turned the key in the door and locked it, and put the key in his pocket. This evidence was sufficient to show defendant's connection with the adjoining room, and the defendant's various objections to the evidence, based on the idea that there was no testimony showing such connection, were properly overruled by the court. Besides, after going from the main room in which the soft drink and restaurant business was conducted into the adjoining room, the defendant, who accompanied the officers into the room, showed a knowledge and famil-

iarity with the beer stored there, and informed the sheriff which of the barrels contained beer and which did not. This testimony of the sheriff was amply sufficient to submit to the jury the question of defendant's keeping or having in his possession the beer and whiskey found in the room adjoining the defendant's place of business, and communicating directly with it by a door, which, if the sheriff's testimony be believed, the defendant used and carried the key to. Furthermore, that the defendant was well acquainted with the premises behind the locked door, and knew which of the barrels had beer in them, and which did not.

One of the state's witnesses, Wineburger by name, testified to buying prohibited liquors in the rear of defendant's restaurant, in the curtained-off department, when the defendant was present in the front of the room on two separate occasions. This witness testified that on each occasion he went through the part of the restaurant where the defendant was, and went back behind the curtains, out of the defendant's view, called for beer, and was waited upon by a negro, who filled the order and received the pay.

One Marion Jones testified as a witness for the state that during the year 1910, and prior to the time he went before the grand jury, he went into the defendant's place of business, and, after going into the curtained off back department, called for whisky, which was furnished by a negro in the place to the witness, and a friend who accompanied him; that the two sat down at the table, drank the whisky, paid the negro who served it 25 cents, and went out. This witness also testified that he "scarcely knew" the defendant, and that in his best recollection the defendant was not in his place of business at the time the two drinks of whisky were served and paid for by him.

14 CA

The defendant's counsel, in brief, urgently insist that the testimony of the witness Jones is not sufficient to justify a conviction of defendant under any of the counts in the indictment. That, as the defendant was not shown to have been present, counsel argue that there was nothing more than a mere conjecture to show defendant's connection with the transaction upon which a jury could base a verdict of guilty. To this estimate of the state's evidence, we cannot agree. If the testimony introduceed in behalf of the state is to be believed, the defendant was the proprietor of a soft drink stand and restaurant, in connection with which, under his control and under lock and key, the defendant kept stored considerable quantities of prohibited liquors in a condition ready for sale and easy of access to a curtained-off department in the back of his restaurant, where there were chairs and a table screened from the view of any one in the front part of the establishment. In this rear, curtained-off department, a negro had, on two different occasions, while the defendant was in the front of his restaurant, and closely enough connected with the transaction in question to be within the same punishable period, sold prohibited liquors, and the purchaser had passed by the defendant in going into the rear department to negotiate the illegal transaction each time.

Having shown that Carson, the defendant, was the proprietor of the restaurant, all of the above evidence was relevant as tending to show his connection with the sale testified to by Jones. If the state's evidence is believed, it tended to show that the defendant was operating a place in defiance of the law, where prohibited liquors were kept for sale, and his criminal connection with the sale testified to by the witness Jones is not left to mere conjecture; but, on the contrary, it

seems to us might naturally flow as a reasonable conclusion from the facts and circumstances in evidence before the jury. See *Allison v. State,* 1 Ala. App. 206, 55 South. 453.

The prohibition laws must be liberally construed to accomplish the purposes of their enactment, which is to suppress the evils of intemperance and secure obedience to and the enforcement of the laws of the state for the suppression of illegal liquors, and to prevent evasions and subterfuges by which the law may be violated. Acts 1909, p. 96, § 37.

There is no merit in the argument that the time was not sufficiently shown as to the transaction testified to by the witness Jones. The witness stated that the sale took place during the year 1910, and before he went before the grand jury. The indictment against the defendant upon which he was being tried was found by the grand jury at the September term, 1910, of the court, and the trial was had at the spring term, 1911, on April 3d. This was sufficient, as the only reasonable inference to be drawn from the statement, in connection with the evidence, is that the witness had reference to the grand jury held at the September term of the court, 1910.

Refused charges Nos. 10, 12, 19, and 20 challenge the constitutionality of section 4 of the act generally known as the "Fuller Bill." Acts 1909, p. 64. This proposition has been passed upon adversely to appellant's contention by the Supreme Court in *Tool's case,* 170 Ala. 41, 54 South. 195. It is not insisted in brief by appellant that the refusal of other charges than those above referred to constitute error. We have examined all other refused charges, and find no error in their refusal. They are clearly faulty, and a discussion of them is unnecessary.

[Bradley v. The State.]

There was sufficient evidence before the jury to justify a finding of guilt on each of the four counts of the indictment numbered 1, 2, 3, and 4; and from what we have said it will be seen that no error was committed by the trial court on its rulings on the evidence.

No error is shown by ·the record, and the case will be affirmed.

Affirmed.

### *Violating Prohibition Law.*

